UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEONDRA TERRELL WILLIAMS,

        Petitioner,                      Case No. 14-cv-10753
                                                 Hon. Matthew F. Leitman

v.

CATHERINE S. BAUMAN,

        Respondent.

_____/

**OPINION AND ORDER (1) DENYING PETITION FOR A WRIT OF HABEAS CORPUS (ECF #1), (2) DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Deondra Terrell Williams ("Williams") is a state prisoner confined at the Chippewa Correctional Facility in Kincheloe, Michigan. On February 18, 2014, Williams filed a petition in this Court seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). (*See* ECF #1.) In the Petition, Williams challenges his state-court convictions for first-degree felony murder, armed robbery, conspiracy to commit armed robbery, and possession of a firearm during the commission of a felony (felony-firearm). For the reasons stated below, the Petition is **DENIED**.

1

# I

On December 16, 2010, following a bench trial in the Genesee County Circuit Court, Judge Richard B. Yuille found Petitioner guilty of first-degree felony murder, M.C.L. § 750.316(1)(b), armed robbery, M.C.L. § 750.529, conspiracy to commit armed robbery, M.C.L. §§ 750.157a and 750.529, and possession of a firearm during the commission of a felony (felony-firearm), M.C.L. § 750.227b. (*See* 12/16/2010 Trial Tr., ECF #10-14.) The Michigan Court of Appeals recited the relevant facts of the charged offenses as follows:

> On September 21, 2008, Saba's Mini Mart was robbed and the clerk, Monir Alyatim, was shot and killed. The surveillance footage presented to the jury shows three men entering the store shortly after 11:00 p.m. The first subject to appear is wearing dark pants and a dark hooded sweatshirt with the hood up. Shortly thereafter, a second subject is seen running up to the front counter. The second subject jumps on the counter, puts his arm over the bulletproof glass, and points a handgun in the direction of the clerk. While the second subject is on the counter, a third subject is seen inside the store holding a pistol grip shotgun. The clerk is seen emptying the registers and handing the money to the second subject. After taking the money, the second subject shoots the clerk and flees the scene with the other subjects. [Petitioner], [co-defendant Geoffrey] Lawson, and [co-defendant Cortez] Bailey were eventually identified as being involved in the robbery and murder. Lawson was identified as the person who shot the clerk, while [Petitioner] was identified as the suspect holding the pistol grip shotgun.

*People v. Williams*, 2012 WL 2402027, at *1 (Mich. Ct. App. June 26, 2012). The

Michigan Court of Appeals affirmed Petitioner's conviction, and the Michigan Supreme Court denied Petitioner leave to appeal. *See id.*; *lv. den.*, 822 N.W.2d 779 (Mich. 2012).

Petitioner now seeks habeas relief on three grounds: he insists that the Michigan Court of Appeals unreasonably rejected his arguments that (1) there was insufficient evidence to convict him of felony murder, (2) he was denied a fair trial based on alleged misconduct of the state-court prosecutor, and (3) he was denied the effective assistance of counsel. (*See* Petition at 3, ECF #1 at Pg. ID 3.)

## II

28 U.S.C. § 2254(d)(1), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), limits a federal court's review of constitutional claims raised by a state prisoner in a habeas action where the claims were adjudicated on the merits by the state courts. Pursuant to Section 2254(d)(1), relief is barred unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this]

3

precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

"[T]he 'unreasonable application' prong of [Section 2254(d)(1)] permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

### III

### A

Petitioner's first claim is that the evidence introduced at trial was insufficient to sustain his conviction for felony murder under an aiding and abetting theory. The Michigan Court of Appeals considered this argument and rejected it:

> [Petitioner's] specific contention is that there is no evidence that he possessed the requisite intent to murder. That is, there is no evidence that he aided in the armed robbery with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result. However, malice can be inferred when the defendant sets into a motion a series of events likely to cause death or great bodily harm, and by the use of a dangerous weapon. Both [Petitioner] and [co-defendant] Lawson were armed during the robbery. [Petitioner] paced around the store with a shotgun while Lawson pointed a handgun at the clerk. Although there is no evidence that defendant knew Lawson would kill the clerk, the evidence did show that by being armed during a robbery [Petitioner] intended to do an act in obvious disregard of life endangering consequences, thus evidencing his malicious intent. Therefore, there was sufficient evidence presented to convict [Petitioner] of felony murder.

*Williams*, 2012 WL 2402027, at *1 (internal citations and punctuation omitted).

The state appellate court's holding was not an unreasonable application of clearly established federal law. Under controlling Supreme Court precedent, when this Court reviews the sufficiency of the evidence to support a criminal conviction,

5

it asks itself "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 318-19 (emphasis in original). Instead, the relevant question is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). The *Jackson* standard applies to bench trials, as well as to jury trials. *See*, *e.g.*, *U.S. v. Bronzino*, 598 F.3d 276, 278 (6th Cir. 2010).

Here, the Michigan Court of Appeals did not unreasonably apply *Jackson* when it rejected Petitioner's sufficiency-of-the-evidence claim. Petitioner insists that there was insufficient evidence to establish that he acted with the required intent to support his felony murder conviction. To convict a defendant of felony murder under Michigan law, the prosecution must prove, among other things, that the defendant acted "with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice]." *Matthews v. Abramajtys*, 319 F.3d 780, 789 (6th Cir. 2003) (citing *People v. Carines*, 597 N.W.2d 130, 136 (Mich. 1999)). A fact-finder "can properly infer malice from evidence that a defendant set in motion

6

a force likely to cause death or great bodily harm." *People v. Aaron*, 299 N.W.2d 304, 327 (Mich. 1980). "Malice may also be inferred from the use of a deadly weapon." *Carines*, 597 N.W.2d at 136. As the Michigan Court of Appeals noted, the evidence here established that the Petitioner actively participated in an armed robbery with two other men, while at least one of his co-defendants was armed with a handgun. In addition, Petitioner himself was armed with a pistol-grip shotgun, and he was seen "patrolling the aisles with [that] long gun." (12/16/10 Trial Tr. at 7, ECF #10-14 at Pg. ID 802.) Based on these and other facts introduced at trial, it was not unreasonable for the Michigan Court of Appeals to conclude that Petitioner acted with the required intent. Thus, Petitioner is not entitled to habeas relief on his first claim.

**B**

Petitioner's second claim is that the prosecutor engaged in misconduct that denied him a fair trial in two respects. First, Petitioner argues that the prosecutor wrongly failed to locate and produce witness Tonya Powell ("Powell") for live testimony at trial. (*See* Petition at 12-17, ECF #1 at Pg. ID 20-25.) Second, Petitioner argues that the prosecutor unlawfully waited until the start of trial to turn over the statement of witness Geneva Ingram ("Ingram"). (*See id.* at 18-23, ECF #1 at 26-31.) The Court will address each in turn.

**1**

It is not clear from the record whether Petitioner has exhausted his argument that the state-court prosecutor deprived him of a fair trial by failing to produce Powell for live testimony at trial. On direct appeal, Petitioner argued that the trial court erred when it allowed the prosecutor to introduce Powell's preliminary examination testimony after it was determined that she was an unavailable witness. (*See* ECF #10-16 at Pg. ID 902-906.) The Michigan Court of Appeals rejected that argument on the basis that it was waived after Powell's trial counsel failed to object. *See Powell*, 2012 WL 2402027, at *2. However, the argument Powell makes here appears slightly different. In the Petition, Powell insists prosecutor "failed" in his duty to "assist the Petitioner in locating Ms. Powell" so that Petitioner could elicit "additional" presumably favorable "testimony" from her at trial. (Petition at 12-13, ECF #1 at Pg. ID 20-21.) It does not appear that the Michigan Court of Appeals understood Petitioner to be making this argument, and that court did not address this argument.

However, even if the Court were to give Petitioner the benefit of the doubt on these procedural matters – i.e., if the Court were to analyze this claim as if Petitioner raised it and the state court failed to address it[1], thus permitting this Court to review

---

[1] Respondent contends that all of Petitioner's prosecutorial misconduct claims are

the claim *de novo* – the Court would still not grant relief on this claim. Simply put, even if the prosecutor was under some duty to aid Petitioner in locating and producing Powell for live testimony at trial (and, to be clear, the Court is not making such a holding here) Petitioner has failed to show any prejudice from the prosecutor's inaction. Indeed, Petitioner has not identified what "additional testimony" he sought to introduce from Powell or even attempted to explain how Powell's testimony would have changed either his defense or the end result of his trial in any way. Petitioner's wholly conclusory insistence that "her testimony would raise reasonable doubt about [his] guilt or innocence" (*id.* at 13, ECF #1 at Pg. ID 21) is insufficient to establish that any alleged failure on the part of the prosecutor deprived him of his right to a fair trial under the Due Process Clause. The Court therefore denies Petitioner habeas relief with respect to the prosecutor's conduct related to Powell.

---

procedurally defaulted and/or waived because Petitioner either failed to object or preserve the issues for habeas review. A habeas petitioner's failure to exhaust his state court remedies is not a bar to federal habeas review of the claim "when the claim is plainly meritless and it would be a waste of time and judicial resources to require additional court proceedings." *Friday v. Pitcher,* 200 F.Supp.2d 725, 744 (E.D. Mich. 2002); *see also* 28 U.S.C. § 2254(b)(1)(A)(c). Because these claims are without merit, the Court need not address the exhaustion issue.

**2**

Petitioner next argues that the prosecutor deprived him of a fair trial when the prosecutor waited until the day of trial to turn over Ingram's witness statement. (*See* Petition at 18-23, ECF #1 at 26-31.) Petitioner attempted to raise this claim on direct appeal, but the Michigan Court Appeals held that he had "abandoned" it after he failed to identify Ingram as the witness whose statement was not disclosed in his appellate papers. *Williams*, 2012 WL 2402027, at *3 ("As for the witness statement cited, [Petitioner] fails to identify the witness. Therefore, we are unable to conclude whether any error occurred. The argument has been abandoned"). Petitioner now argues that the prosecutor's decision to wait until the day of trial to produce Ingram's statement "interfered with defense counsel's ability to defend Petitioner" and prevented the defense from "investigating additional bases for moving to suppress the statement." (Petition at 23, ECF #1 at Pg. ID 31.) Once again, if the Court were to give Petitioner every benefit of the doubt on the procedural issues related to this claim and were to apply *de novo* review, the Court would still deny relief.

Much of this claim appears to rest on Petitioner's repeated insistence that the prosecutor's late disclosure of Ingram's statement violated state-law discovery rules (*see* Petition at 18, ECF #1 at Pg. ID 26, quoting Michigan Court Rule 6.201(B)), but a violation of such rules is not cognizable on federal habeas review unless it

violates the Due Process Clause. *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002); *see also Friday v. Straub,* 175 F. Supp. 2d 933, 940 (E.D. Mich. 2001). Petitioner has failed to show such a violation here. Indeed, Petitioner has not shown how he was prejudiced by the delayed disclosure of Ingram's witness statement. Petitioner has not asserted, for example, that there was any new or surprising information in Ingram's statement. Nor does he explain how, if given more time, he may have been able to move for the exclusion of the statement at trial. Instead, Petitioner does no more than make conclusory assertions – devoid of any details or specifics – that the delayed production of the statement deprived him of a fair trial. Such unsupported claims are insufficient to establish that the late disclosure amounted to a violation of the Due Process Clause. Petitioner is not entitled to habeas relief on this claim.

## C

Petitioner's final claim is that his trial counsel was ineffective. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-part test to determine whether a criminal defendant petitioner has received the ineffective assistance of counsel. First, a defendant must show that his counsel's performance was deficient. *See id.* at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

11

defendant by the Sixth Amendment." *Id.* Second, the defendant must show "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

To satisfy the performance prong of *Strickland*, a defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. A court's scrutiny of counsel's performance is highly deferential. *See id.* at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The burden is on the defendant to overcome the presumption that the challenged action was sound trial strategy. *See id.* at 689.

To satisfy the prejudice prong of the *Strickland* test, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. To be a reasonable probability, it must be sufficient to undermine confidence in the outcome. *See id.* "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112 (quoting *Strickland*, 466 U.S. at 693).

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id*. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. Here, Petitioner has failed to establish that he is entitled to habeas relief on his ineffective assistance claims.

### 1

Petitioner first claims that his trial counsel was ineffective when counsel "failed to show due-diligence in producing an out-of-state witness, Tonya Powell, and reading her preliminary examination transcripts at trial." (Petition at 26, ECF #1 at Pg. ID 34.) The Michigan Court of Appeals reviewed and rejected the portion of this claim relating to counsel's failure to object to the reading of Ms. Powell's preliminary examination testimony. The state court held that Petitioner failed to show both that counsel's performance was deficient and that there was a reasonable probability that the result of his trial would have been different if the testimony was excluded:

> Assuming without deciding that counsel could have raised a legitimate objection [to the admission of the preliminary examination testimony], his failure to do so was not objectively unreasonable. [Petitioner] was identified as

13

> being involved in the armed robbery and murder by two witnesses appearing at trial. One testified that he saw the surveillance video and that the suspect with the shotgun was wearing the same ball cap that [Petitioner] was wearing just minutes before the robbery. The other testified that she saw [Petitioner] outside her house shortly before the robbery, and that he was holding a shotgun. The witness also testified that [Petitioner] asked her if she was "keeping her mouth shut" the day after the robbery. In light of this evidence, defense counsel made the strategic decision to focus on whether [Petitioner] had the requisite intent to be convicted of felony murder. We will not second-guess counsel regarding matters of trial strategy. Moreover, even if we set aside the challenged preliminary examination testimony, [Petitioner] cannot show a reasonable probability that the outcome would have been different had counsel objected.

*Williams*, 2012 WL 2402027, at *2-*3 (internal citation omitted).

Petitioner has not shown that this holding was unreasonable. In particular, Petitioner has failed to demonstrate any error in the state court's conclusion that Petitioner did not establish prejudice from this allegedly-ineffective assistance. The state appellate court reasonably noted that there was significant other evidence of Petitioner's guilt beyond Powell's preliminary exam testimony.

Finally, to the extent that Petitioner claims his counsel was ineffective for failing to either secure Powell's appearance at trial or for failing to force the prosecutor to produce Powell, that claim fails as well. As noted above, aside from unsupported, conclusory assertions, Petitioner has not made any showing of

prejudice from Powell's absence from trial. Petitioner is therefore not entitled to habeas relief on the basis of ineffective assistance related to (1) counsel's alleged failure to secure Powell's attendance at trial or (2) counsel's failure to object to the admission of her preliminary examination testimony at his trial.

## 2

Petitioner further claims that his trial counsel was ineffective for failing to object to the delayed disclosure of Ingram's witness statement. Petitioner is not entitled to relief on this claim because, for the reasons set forth above, he has not shown that he suffered any prejudice from his counsel's failure to object to the late disclosure of Ingram's statement. Simply put, he has not offered the Court any basis on which to conclude that the late disclosure actually made any difference at trial. Petitioner offers no specifics at all as to how the late disclosure prejudiced him. Because Petitioner has not satisfied his burden to show prejudice from any alleged errors by his counsel related to this evidence, he is not entitled to habeas relief.[2]

---

[2] In the Petition, Petitioner makes one final argument with respect to his trial counsel: that counsel was "hostile" towards him, "expressly agreed with the prosecutor's theory of the case and the trial court's finding of guilt," and failed to work diligently on Petitioner's behalf because Petitioner did not pay him for his legal services. (*See* Petition at 27-28, ECF #1 at Pg. ID 35-36.) It does not appear that Petitioner ever presented or exhausted this claim in state court. In any event, Petitioner presents no *evidence* to support his claim that his trial counsel had divided loyalties and he has not established that he is entitled to habeas relief on this basis. Indeed, while Petitioner insists that the case against him "was far from unassailable," as noted

## IV

For all of the reasons stated above, the Court **DENIES** the Petition.

The Court further **DECLINES** to issue Petitioner a certificate of appealability. In order to obtain a certificate of appealability, a habeas petitioner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, as the Court has done here, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *See id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Petitioner is not entitled to habeas relief on any of the claims in his Petition. The claims are largely of a conclusory nature and plainly do not warrant relief. The

---

above, the Michigan Court of Appeals' conclusion that there was sufficient evidence to convict of him of the charged offense was not unreasonable.

Court concludes that reasonable jurists could not debate whether the petition should have been resolved in a different manner. Therefore, the Court will not grant a certificate of appealability.

Although this Court has denied Petitioner a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* (an "IFP") is lower than the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002) (citing *United States v. Youngblood*, 116 F.3d 1113, 1115 (5th Cir. 1997)). While a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *See Foster* at 764-65; *see also* 28 U.S.C. § 1915(a)(3); Fed. Rule App. Proc. 24(a). Although jurists of reason could not debate this Court's resolution of Petitioner's claims, the issues Petitioner raises are not frivolous. Therefore, Petitioner could appeal this Court's decision in good faith. The Court therefore **GRANTS** Petitioner leave to proceed *in forma pauperis* on appeal.

    **IT IS SO ORDERED.**

                                       s/Matthew F. Leitman
                                       MATTHEW F. LEITMAN
                                       UNITED STATES DISTRICT JUDGE

Dated: February 27, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 27, 2017, by electronic means and/or ordinary mail.

        s/Holly A. Monda
        Case Manager
        (313) 234-5113